254 So.2d 293 (1971)
Herman WRIGHT, d/b/a Whitney Place Apartments
v.
Mr. and Mrs. Richard E. HUGHES, Jr.
No. 4500.
Court of Appeal of Louisiana, Fourth Circuit.
July 15, 1971.
Rehearing Denied October 6, 1971.
*294 Francipane, Regan, Post & St. Pee, Richard T. Regan, Metairie, for plaintiff-appellant.
Mr. and Mrs. Richard E. Hughes, Jr., in pro. per.
Before LEMMON, STOULIG and BARNETTE, JJ.
STOULIG, Judge.
This is an appeal from a judgment dissolving a writ of sequestration obtained by a landlord to preserve his lessor's privilege on movable property of the tenant seized from the leased premises.
The facts are these: On April 1, 1969, Richard E. Hughes leased an apartment from plaintiff for a one-year period at a monthly rental of $165. The lease also contained a provision for automatic renewal for a second year if neither party notified the other of its termination when the primary term ended. It also included this clause:
"This lease is made for and in consideration of a monthly rental of One Hundred Sixty Five ($165.00) Dollars per month payable in advance on or before the 1st day of each month at 2720 Whitney PlaceRental Office. If rent is paid not later than the 5th of the month, the rent will be $155.00 * * * If lessor is given a check and said check is not honored on presentation for any reason whatsoever, lessee agrees to pay an additional sum of $10.00."
This litigation stems from a controversy over rent for August, 1970. The record reveals that at 10 p. m., August 5, 1970, Richard Hughes deposited a check for $155 at the office of the manager by slipping it under the door. The following morning his wife deposited $155 for credit to the Hughes's checking account in the night depository of the First National Bank of Jefferson Parish at approximately 8:50 a. m. The deposit slip bears the bank's stamp of receipt as of 9:08 a. m., the time of its removal from the vault. Unaware that her husband had issued a check for the August rent, she wrote a second check and delivered it to a secretary in the manager's office later that morning. Shortly after noon of the same day, William C. Potts, the apartment manager, took Mr. Hughes's check to the drawee bank to have it certified, with the intention of depositing it to plaintiff's account. Upon the bank's refusal to do so for want of sufficient funds, the check was stamped "NSF," at the request of and as an accommodation to Mr. Potts. Due to internal bookkeeping procedures, the bank did not credit Mrs. Hughes's deposit to the Hughes's checking account until after their rent check was presented for payment; however, the Hughes's bank statement for August, 1970, reflects a balance of $162.18 in the account as of August 6. Potts did not notify either Mr. or Mrs. Hughes that the check had been dishonored by the bank, but within three hours of its presentment filed this suit at 3:48 p. m. of the same day, alleging the August rent was unpaid, and obtained the disputed conservatory writ on the following allegation:
"Petitioner has a Lessor's privilege to secure his claim for rent due on all of *295 the movables on the leased premises; all of the moveables on which plaintiff has a privilege are in the possession of the defendants; and it is within his power to, and plaintiff has good reason to believe that he will conceal, dispose of, or remove these movables, from the Parish during the pendency of this suit. To protect petitioner's rights, it is necessary that a sequestration issue, without bond, directing the Sheriff to seize all of the movables affected by petitioner's privilege, and to hold them subject to the further order of the Court."
The seizure was made on August 7, on which date Potts refused tenders of payment made by Mrs. Hughes and by her father-in-law. The motion seeking to dissolve the writ and to collect damages for wrongful seizure was filed by the lessee and a trial was held limited to the question of the propriety of the issuance of the writ. The question of damages, if any, was left in abeyance with full reservation of litigants' rights. On August 25, Hughes posted a $450 cash bond to secure the release of the furniture which had been sequestered. On August 27, the trial court rendered judgment dissolving the writ, and the plaintiff-landlord appealed suspensively on September 11, 1970. That same day, upon their written motion, the lessees' attorneys were permitted to withdraw from the case. While the suspensive appeal was pending, the trial judge, on the ex parte motion of the defendant, released the cash security. The record discloses no explanation for this action.
The lessor's lien is purely statutory and the rights thereunder are conferred by LSA-C.C. arts. 2705, 3218 and LSA-C.C.P. arts. 3571 and 3572. The pertinent provisions of the above-cited Civil Code articles are as follows:
LSA-C.C. art. 2705. "The lessor has, for the payment of his rent, and other obligations of the lease, a right of pledge on the movable effects of the lessee, which are found on the property leased."
LSA-C.C. art. 3218: "The right which the lessor has over the products of the estate, and on the movables which are found on the place leased, for his rent, is of a higher nature than mere privilege. * * *"
Appellant contends the lower court erred in dissolving the writ and seeks a reversal of this judgment together with an order directing the lessee to redeposit the cash bond of $450. He submits that LSA-C.C. P. art. 3571 authorized the issuance of a writ of sequestration as the August rent had become delinquent. That article provides:
"When one claims the ownership or right to possession of property, or a mortgage, lien, or privilege thereon, he may have the property seized under a writ of sequestration, if it is within the power of the defendant to conceal, dispose of, or waste the property or the revenues therefrom, or remove the property from the parish, during the pendency of the action."
Alternatively, he contends that even if we find the rent was not past due, then there is sufficient authority for the issuance of the writ under LSA-C.C.P. art. 3572, which reads as follows:
"A sequestration based upon a lessor's privilege may be obtained before the rent is due, if the lessor has good reason to believe that the lessee will remove the property subject to the lessor's privilege. If the rent is paid when it becomes due, the costs shall be paid by the plaintiff."
The jurisprudence, in construing these procedural articles, has held that the lessor need only demonstrate the lessee's ability to conceal movables on which he has a lien in instances where the rent is past due to justify issuance of this conservatory writ. LSA-C.C.P. art. 3571; Montagne v. Tinker, 197 So.2d 154 (La.App.3d Cir. 1967). But, if he wishes to sequester property to secure a privilege on rent to become due in the future, he must have good reason to believe that the lessee will *296 remove the property subject to the lessor's privilege. LSA-C.C.P. art. 3572; Montagne v. Tinker, supra.
Before applying these principles to the instant case, we must first conclude whether or not the rent was in fact past due. By its terms, the contract of lease specifies a monthly rental of $165 payable in advance on or before the first day of each month. It further contradictorily provides that if paid by the fifth of the month, the rent will be $155. Obviously, while the lease recites that the rent is due on the first day of the month it contractually permits payments with a $10 discount through the fifth of the month. It would therefore follow that the stipulated rental of $165 would be exacted only in the event payment was made after the fifth. The contract is silent as to the period of time within which the full rental of $165 must be paid. It can reasonably be presumed that this provision indicates that the lessor will accept payment after the fifth of the month. This ambiguity in the terms of the instrument relative to the due date of the rental and the payment therefor must be resolved against the party who drafted the contract, which in this instance is the lessor. Therefore, we conclude that the plaintiff has failed to prove that the rent was past due; thus, the writ of sequestration can only properly be based upon LSA-C.C.P. art. 3572.
In order for the plaintiff to justify the issuance of the writ under LSA-C.C.P. art. 3572 the lessor must have good reason to believe that the lessee will remove the property subject to his privilege. These reasons must appear in the pleadings as specific fact allegations due to the harsh nature of this remedy. LSA-C.C.P. art. 3501. In the instant matter, the plaintiff's petition alleges specifically that the August rent had not been paid, which is the apparent basis for their requested sequestration. However, the pleading does contain the averment that the petitioner had good reason to believe the lessee would conceal or dispose of the movables subject to his privilege, which is a conclusion unsupported by any factual allegations. Furthermore, the only evidence tendered in support of plaintiff's "good reason" to believe that this lessee would conceal or dispose of his furniture was the general statement of the rental manager that in his experience this had happened before. This is hardly sufficient.
We note in passing that the actions of the rental manager were most unusual. In August of 1970, for the first time, he requested certification of the lessee's check, despite the fact that for the preceding 16 months all rent checks of the tenant had been honored on presentation. He also failed to notify the maker that the check had been dishonored, thereby depriving the lessee of the opportunity of substituting cash, or having the drawee bank properly credit his account with the deposit made that morning. Further, he filed a petition seeking a writ of sequestration and past due rental, within three hours after the bank's refusal to certify the plaintiff's draft. It almost appears as if there was a concerted effort on his part to intentionally create the necessary circumstances upon which to predicate his action of seizing the tenants' furniture and seek his eviction.
Appellant's contention that the trial judge improperly released the cash bond is correct. Once the suspensive appeal was perfected, the lower court lost jurisdiction over this matter and thereafter could not authorize the release of the cash bond. By so doing it defeated the purpose of the suspensive appeal. However, in view of the result we have reached herein, there is no need to order it redeposited.
For the reasons assigned, the judgment appealed from is affirmed. Appellant is to pay all costs of these proceedings to date.
Affirmed.

On Rehearing
PER CURIAM.
Since a writ of sequestration issues without a hearing, specific facts as to the *297 grounds relied upon for issuance must be contained in the verified petition in order that the issuing judge can properly evaluate the grounds. See LSA-C.C.P. art. 3501. The holding of this case is simply that the trial judge should not have caused the writ to issue, because the specific facts were not pleaded.
In any subsequent action for damages for wrongful issuance of the writ, nothing in this opinion precludes the lessor from pleading and proving the specific facts relied upon in his general allegation that he had good reason to believe that the lessee would remove the property subject to the lessor's privilege.